HERBERT CLARK GILSON, PLAINTIFF AND APPELLEE, v. PENNSYLVANIA RAILROAD COMPANY, DEFENDANT AND APPELLANT.

Argued June 2, 1914—Decided October 28, 1914.

1. A "bailment" consists in the holding of a chattel by one person under an obligation to return or deliver it to another after some special purpose is accomplished. It may be actual or constructive.

2. An actual bailment exists where there is either (*a*) an actual delivery consisting in giving to the bailee or his agent the real possession of the chattel, or (*b*) a constructive delivery consisting of any of those acts which, although not truly comprising real possession of the goods transferred, have been held by legal construction equivalent to acts of real delivery.

3. A constructive bailment arises where the person having possession of a chattel holds it under such circumstances that the law imposes upon him the obligation to deliver it to another.

4. Where delivery can be constructive only, there must be an intention to transfer such a possession of the property as would exclude, for the time of the bailment, the possession of the owner.

5. The defendant operated a "quick lunch" restaurant, having upon the walls notices "Not responsible for loss of coats, hats, umbrellas," &c., and in which the cashier would, if requested, and sometimes did, take charge of overcoats for the patrons. The plaintiff testified that he had never seen the notices on the wall and did not know that the cashier would care for coats, although he had patronized the restaurant for twenty years almost daily. Plaintiff entered the restaurant and hung his overcoat on a clothes-tree back of the stool on which he seated himself to eat his lunch, and while he was eating his coat disappeared. He did not in any way bring his coat to the attention of any of the defendant's employes nor ask any of them to take charge of it. *Held*, that there was no bailment and the defendant was not liable for the loss of the coat.

On appeal from the First District Court of Jersey City.

Before Justices TRENCHARD and BERGEN.

For the appellant, *Vredenburgh, Wall & Carey*.

For the appellee, *Herbert Clark Gilson*.

The opinion of the court was delivered by

TRENCHARD, J. This was an action brought to recover the value of an overcoat which disappeared after plaintiff had hung it upon a hook a few feet from where he had seated himself in defendant's restaurant. At the trial it appeared that the defendant's restaurant is at its terminal in Jersey City, and is of the "quick lunch" type. It is about sixty feet long by about forty feet wide. It consists of a counter in the centre of the room, somewhat in the shape of a horseshoe, around which on the outside are provided stationary stools on which patrons may sit while eating lunch. There were no tables or chairs. Three or four "clothes-trees" were provided about twenty or twenty-five feet apart around the room. There was no checkroom, but the cashier would, if requested, and sometimes did, take charge of overcoats for patrons. In conspicuous places on the walls were a number of printed notices about eighteen inches long, about fourteen inches wide, containing the words "Not responsible for loss of coats, hats,

umbrellas," etc., the letters being from an inch and a quarter to an inch and a half in height. The signs were near the clothes-trees and were of sufficient size to be seen across the room. The plaintiff had patronized the defendant's restaurant almost daily for twenty years.

On December 2d, 1913, the plaintiff entered the restaurant and hung his coat on one of the clothes-trees a few feet back of the stool on which he seated himself to eat his lunch, and after he had finished eating, he discovered that his coat, which was comparatively new, was missing, and that in its place was another coat approximately the same size as plaintiff's, but showing much evidence of wear. He then reported the loss to the steward. Plaintiff hung up the coat himself. He did not ask the cashier to take charge of it, nor did he place it in the physical possession of anybody connected with defendant's restaurant, nor did he in any way bring his coat to the attention of any of defendant's servants or employes until after the coat had disappeared. The first that defendant knew anything about the coat was after its loss. Plaintiff testified that his coat was within reach and that he could go to it and take anything from the pockets or otherwise use the coat without requiring any act on the part of the defendant or its servants.

The learned trial judge, sitting without a jury, gave judgment for the plaintiff.

We are of the opinion that the judgment cannot stand.

We agree with the trial judge that, under the proofs, "the right to recover depends on whether the defendant became bailee of the plaintiff's overcoat," but we do not agree that there was a bailment.

This case is much like *Wentworth* v. *Riggs,* 143 *N. Y. Supp.* 955. Therein the nature and elements of bailment are clearly stated. A "bailment" consists in the holding of a chattel by one person under an obligation to return or deliver it to another after some special purpose is accomplished. It may be actual or constructive.

An actual bailment exists where there is either (*a*) an actual delivery consisting in giving to the bailee or his agent the real possession of the chattel, or (*b*) a constructive delivery

consisting of any of those acts which, although not truly comprising real possession of the goods transferred, have been held by legal construction equivalent to acts of real delivery.

A constructive bailment arises where the person having the possession of a chattel holds it under such circumstances that the law imposes upon him the obligation to deliver it to another.

That, in the present case, there was no constructive bailment is apparent from the fact that the defendant never had the actual possession of the coat.

That there was no actual bailment is evident from the fact that there was no delivery, either actual or constructive.

There was no actual delivery because, as we have pointed out, neither the defendant, nor its agents, ever had the actual possession of the overcoat.

We think, also, that there was no constructive delivery.

Where, as in the present case, the delivery can be constructive only, there must be an intention to transfer such a possession of the property as would exclude, for the time of the bailment, the possession of the owner. 5 *Cyc.* 165.

We think the evidence does not disclose any such intention upon the part of either party.

The presence of the clothes-trees may be regarded as an invitation to the patron to hang his coat upon them if he saw fit. Obviously, they were there for the convenience of the patron if he wished to lay aside his coat while eating and yet not part with the control thereof. That the plaintiff chose to do. Clearly, he did not thereby transfer the exclusive possession of the coat to the defendant. The defendant had no knowledge of the transaction, and was not in anywise apprised that it was to be the bailee of the coat or charged with its safekeeping. If, on the other hand, the plaintiff had chosen to part with the control of his coat, and to charge the defendant with the duties and responsibilities growing out of the relation of bailee, he might have done so by transferring the exclusive possession thereof to the defendant. This he could have done by requesting the cashier to take charge of

his coat as other patrons sometimes did. It is true that the plaintiff testified that he did not know of such custom. But this, we think, considering his familiarity with the restaurant, merely emphasizes the .fact that the plaintiff always preferred to keep his coat under his own control.

Since there was neither an actual nor constructive bailment, and as there is no other ground, under the proofs, upon which the defendant's liability can be predicated, the judgment will be reversed and a new trial awarded.